OTTO F. VON ARNIM, Respondent, *v.* HARRISON B. MOORE, Appellant.

*Contract — statement by one holding an assignment of a mortgage to secure a debt of William Onderdonk that he will on payment of the debt surrender it and will hold it to secure any claim of a third person against William Onderdonk — it is not effective to secure a loan by the third person to William M. Onderdonk — estoppel — duty of the third person to pay the debt first secured thereby.*

William Onderdonk assigned a mortgage for $3,000 to Harrison B. Moore as security for a loan to him of $1,000. Thereafter William M. Onderdonk, the father of William Onderdonk, applied to Otto F. Von Arnim for a loan, stating that he could give as security the mortgage then held by Moore. William M. Onderdonk subsequently delivered to Von Arnim, who knew him only as William Onderdonk, the following letter:

"NEW YORK, *Jany.* 19th, 1892.

"MR. OTTO F. VON ARNIM, New York:

"DEAR SIR.— I hold the mortgage of B. H. Onderdonk to William Onderdonk for $3,000 as security for loan of $1,000, and will surrender said mortgage to you on payment of said $1,000, and I hereby agree to hold the balance of $2,000 on said mortgage subject to any claim you may have for money loaned to said William Onderdonk until said $1,000 is paid to me, when I will assign said mortgage to you. The mortgage has been sent to Jamaica, L. I., county clerk's office for record and has not yet been returned to me. I wrote for it yesterday.

"Very truly yours,

"H. B. MOORE."

Von Arnim thereupon loaned $3,000 to William M. Onderdonk upon the faith of the mortgage.

In January, 1894, Von Arnim wrote to Moore relative to the mortgage and the loans he had made and received in reply a letter suggesting the expediency of an examination of the title and adding " in case we should wish to take any action in the matter the information would probably serve to aid us.".

In March, 1896, Moore, without notice to Von Arnim, surrendered the mortgage to William Onderdonk upon payment of the $1,000 due to him, and executed a satisfaction piece thereof. Von Arnim thereupon brought an action against Moore to recover the sum of $2,000, which still remained due to him from William M. Onderdonk.

*Held*, that the defendant was not liable under the terms of the letter of January 19, 1892, as the plaintiff never loaned any money to William Onderdonk and had never paid or offered to pay the $1,000 mentioned therein;

That the plaintiff was not entitled to recover upon the theory of an estoppel, as it did not appear that Moore had delivered the letter to William M. Onderdonk or that he knew that it was William M. Onderdonk who presented the letter to the plaintiff;

That, under any permissible construction of the trust letter, the defendant, in the event of the plaintiff's refusal pay the $1,000 due to the defendant and to take an assignment of the mortgage, was at liberty to assign the mortgage to any one who would pay such $1,000.

APPEAL by the defendant, Harrison B. Moore, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of July, 1902, upon the decision of the court rendered after a trial at the New York Special Term.

The action was brought to recover damages of the defendant for a breach of trust in surrendering collateral which he had agreed to retain and hold as security for an indebtedness of one William Onderdonk to the plaintiff.

The record shows that William Onderdonk held a mortgage on property in North Hempstead and assigned said mortgage in January, 1892, to the defendant, Harrison B. Moore, as security for a loan to said William Onderdonk of $1,000. About January 19, 1892, William M. Onderdonk, the father of William Onderdonk, applied to the plaintiff, who knew said father only as William Onderdonk, for a loan; and represented to him that he could give plaintiff as security a mortgage for $3,000 on property which was worth $30,000, which mortgage H. B. Moore then held as security for a debt of $1,000. The plaintiff acquiesced, and William M.

Onderdonk subsequently came to him stating that the mortgage had been sent away, but that Mr. Moore guaranteed the repayment of any loan to the extent of the security he held, and gave to the plaintiff the following paper:

"NEW YORK, *Jany.* 19*th*, 1892.

"Mr. OTTO F. VON ARNIM, NEW YORK:

"DEAR SIR.— I hold the mortgage of B. H. Onderdonk to William Onderdonk for $3,000 as security for loan of $1,000, and will surrender said mortgage to you on payment of said $1,000, and I hereby agree to hold the balance of $2,000 on said mortgage subject to any claim you may have for money loaned to said William Onderdonk until said $1,000 is paid to me, when I will assign said mortgage to you.    The mortgage has been sent to Jamaica, L. I., County Clerk's office for record and has not yet been returned to me.    I wrote for it yesterday.

"Very truly yours,
"H. B. MOORE."

Thereupon the plaintiff loaned to William M. Onderdonk various sums of money, up to about $3,000, upon the faith of the mortgage as security, and received from him notes made by the Roasted Cereals Company to the order of William M. Onderdonk at various times, which Onderdonk indorsed and turned over to the plaintiff, when the sums were advanced.    In addition to the mortgage the plaintiff accepted as security some stock of the Roasted Cereals Company, but he was never a stockholder thereof, although he held stock as collateral.    The plaintiff having, in January, 1894, communicated with the defendant relative to the mortgage and the loans he had made, received in reply a letter from the defendant, in which the latter said that the situation was unchanged and offered to pay half the expenses of having some one examine the property as to its value, adding, "in case *we* should wish to take any action in the matter the information would probably serve to aid *us.*"

The plaintiff testified that in January, 1894, he went to the defendant's office upon his request, when the following conversation occurred: "I asked Mr. Moore how the matter of the Onderdonk mortgage stood.    He told me that it stood in just the same shape it always had; that he had never got his money, and that he was tired

of the whole thing and wanted to foreclose the mortgage and get his money out of it. I then told him that I had information that the Long Island Railroad was to run a spur down to that property, which would greatly increase its value. Then he told me that it was better not to foreclose it, but to wait, as the property would surely win the value of the mortgage." We then have the following questions and answers: " Q. Isn't it a fact that you came to Mr. Moore's office after having had a conversation with Mr. Moore over the telephone, in which Mr. Moore asked you if you would not pay him this $1,000 and take up the mortgage? A. I will neither deny nor affirm that. I cannot remember. Q. Did you either over the telephone or during this conversation had with Mr. Moore in his office, did Mr. Moore ask you to pay him that $1,000 and take the mortgage off his hands? A. I don't remember. If he had I would have declined. Q. You won't deny it? A. No; I won't deny it. I never loaned any money to the gentleman sitting there; Mr. William Onderdonk, the mortgagee."

Thereafter in March, 1896, the defendant surrendered the mortgage to the son, William Onderdonk, the mortgagee, and executed a satisfaction piece thereof. The plaintiff testified that when he learned that the defendant had so returned the mortgage he went to see him, and Mr. Moore "admitted forgetting that he had written that letter agreeing to hold it." Thereupon the plaintiff brought this action against the defendant to recover the sum of $2,000, the amount still owing him by William M. Onderdonk. The Special Term rendered its decision in plaintiff's favor, and from the judgment thereupon entered the defendant appeals.

*Jesse W. Johnson,* for the appellant.

*Francis W. Aymar,* for the respondent.

O'BRIEN, J.:

This controversy must in the main turn upon the construction to be placed upon what in the absence of a more exact designation we shall refer to as the defendant Moore's " trust letter." Whether there was any duty resting upon the plaintiff to ascertain in the first instance whether the person with whom he was dealing was the one in whose favor the trust letter was written it is unnecessary to

determine, as we shall, without deciding, assume in the discussion that whatever his duty may have been in that respect it was performed. The appellant insists that the agreement was to hold the mortgage for money loaned to William Onderdonk, the mortgagee, and, further, to surrender it to the plaintiff on his payment of the $1,000. If this is the true construction to be placed upon this trust letter, then the defendant is not liable by its terms, because the uncontradicted evidence is that the plaintiff never loaned any money to William Onderdonk, the mortgagee, and never paid or offered to pay the $1,000, and the fair inference is that in the conversation which he had in 1894 the defendant requested payment from him of the $1,000 and he refused; for, if not so, he is frank in stating that if the money had been demanded he would have declined to pay it.

Passing these contentions also, it is evident that the only theory upon which this judgment can be supported is that of an estoppel. It becomes necessary, therefore, to examine the evidence and therefrom determine whether in what the defendant did he furnished the means or created conditions by which the plaintiff to his injury changed his position so that it would be unfair and inequitable upon the defendant's part to now insist that the appearances or conditions upon which the plaintiff acted were not real and true.

There was no privity or relation between the parties. If it had appeared that the defendant, at the request of the father, had delivered the letter to him so that the father could use it for the purpose of borrowing from the plaintiff, then, for the reason that defendant had aided in imposing upon the plaintiff, he would be estopped from claiming that for the moneys so loaned he did not hold the mortgage. There is, however, no such evidence. We have simply the fact that the defendant signed the letter declaratory of the trust, and which was intended, because directed to him, for the plaintiff, and, according to the terms of the letter, this was done for the purpose of enabling Onderdonk, the mortgagee, to obtain a loan of money from the plaintiff. Whether this letter was written at the request of the mortgagee, who did not receive the money from the plaintiff, or William M. Onderdonk, the father, who did, is in no sense material upon the question of estoppel. If it had been made to appear that the letter was actually delivered to the one

who subsequently presented it to the plaintiff and obtained the loan, this would have been a material fact.

Here, however, we have the first broken link in the chain. For all that appears the letter may have been delivered to the mortgagee and, in some way not explained, have gotten into the possession of the father, who was the one who presented it to the plaintiff, and the latter, relying upon its being in the father's favor, made the advances on the faith of it. As stated, however, it does not appear that the defendant gave the letter to the father, nor does it appear that he knew that the father presented it to the plaintiff. That Onderdonk, the father, imposed upon the plaintiff and was guilty of fraud is reasonably certain, but that the defendant was a party thereto was in no way shown, and, as fraud is never presumed but must be proven, and as the presumption to be indulged in is rather that of innocence than guilt, it follows that the defendant upon this record is to be absolved from the charge of having committed any fraud on the plaintiff or having furnished the father with the means of committing the fraud.

The defendant had himself loaned on the mortgage as security, which he was entitled to get back from some one, and as we view his legal rights he was entitled, after holding the collateral for four years, to insist that somebody should take it and pay him back his money.

If we conclude, therefore, as the evidence would seemingly justify, that the defendant requested the plaintiff to pay him back the $1,000 and take the mortgage, and that the attitude of the plaintiff was that he refused or declined, and insisted that it was the duty of the defendant to hold it until it was paid by the mortgagee, then, if wrong in such attitude and in his construction of the legal rights of the defendant, there must in this case, whatever may be our construction of the terms of the trust letter, be a new trial, because if it was the duty of the plaintiff to pay the $1,000, this duty he had for an unreasonable length of time, though notified by the defendant, refused to do. If, on the other hand, we take the view that the plaintiff was entitled to an assignment of the mortgage no matter by whom the $1,000 was paid, there is nothing in the trust letter which would justify the construction that the defendant was bound to hold the mortgage for all time so that if he was never paid the $1,000

by any one, he could never collect his debt. This latter construction would be so unjust and so foreign to the intention of the parties under any reading of the trust letter that it cannot be supported.

Upon this branch of the case, therefore, we think that whether we give to the trust letter the construction that it was thereby made the duty of the plaintiff to pay the $1,000, or that if paid by the mortgagee it was defendant's duty to assign it, there must necessarily be added the further condition that, after a reasonable time had elapsed, subsequent to the period when the debt of the $1,000 became due, the defendant was at liberty, after demanding payment from the plaintiff, to assign the mortgage to the mortgagee or to any one else who would take it and pay him his $1,000.

The trust letter, by its terms, was given for the purpose of enabling the mortgagee to borrow on the faith of it; and although it does not appear that the defendant at any time knew what, if any, amount had ever been obtained upon the faith of it, either by the mortgagee or his father, it does appear, as shown by the second letter, that he knew that the plaintiff made some claim thereunder, because he wrote him about the advisability of having some one examine and appraise the property, the expenses to be divided between them, so that, as stated in his letter, " in case we should wish to take any action in the matter the information would probably serve to aid us." If the money had been loaned to the mortgagee or if it appeared that the defendant gave the letter to the father and the latter by the use of it had obtained the money from the plaintiff, thence it would follow that the plaintiff having acted upon it, could insist that the mortgage should not have been delivered to any one or canceled without notice to him. If, on the other hand, the defendant had no relation with the father and the latter in some unaccountable way had obtained the letter and used it to perpetrate a fraud on the plaintiff, the defendant was under no obligation, to his own detriment, and for all time, to hold the mortgage for the plaintiff's benefit.

In other words, the obligation resting upon the defendant was quite different with respect to loans which might have been made to the son and those which, without his knowledge, were made to the father, though the latter may have used the letter for that purpose, providing always, it was not shown that the defendant had acted

with knowledge of such use by the father. The absence, therefore, of any privity or relation under the terms of the trust letter between the plaintiff and the defendant, and the failure to bring home to the defendant knowledge of the real facts as to his advancement of moneys on the faith of the letter to a person other than the one who was entitled to use it for that purpose, are fatal to a recovery upon the theory of an estoppel. If the money had been advanced to the mortgagee, the real party, then clearly the defendant would have been liable had he, without notice to the plaintiff, surrendered the mortgage to the mortgagee. So, also, if the defendant knew that the plaintiff had advanced the money to the father on the faith of the letter, then it is doubtful, if without notice to the plaintiff, he could have destroyed the latter's rights by satisfying the mortgage at the request of the mortgagee upon receipt of his $1,000. This question, however, it is unnecessary for us to determine, as the facts upon which such a determination would depend are not in this record. The evidence, as it stands, was not sufficient, we think, to establish the liability of the defendant upon the theory of estoppel; and, to the end that the inquiry may be pursued upon the lines here indicated upon which the question of the defendant's liability will depend, it is necessary that there should be a new trial.

The judgment is accordingly reversed, with costs to the appellant to abide the event, and a new trial ordered.

VAN BRUNT, P. J., INGRAHAM, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.